THE CHICAGO TRANSIT AUTHORITY, Plaintiff-Appellee, v. LOLETA A. DIDRICKSON, Director of the Department of Employment Security, *et al.*, Defendants-Appellants (Tenicia Smith, Defendant).

First District (6th Division)   No. 1—94—2059

Opinion filed November 22, 1995.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Jacqueline M. Zydeck, Assistant Attorney General, of counsel), for appellants.

William H. Farley, Jr., and Glenn W. Kaun, both of Chicago Transit Authority, of Chicago, for appellee.

JUSTICE ZWICK delivered the opinion of the court:

This matter comes to us on appeal from the ruling of the circuit court, which reversed the decision of the Board of Review (the Board), which reversed the determination of the referee, which reversed the finding of the claims adjudicator regarding the eligibility of defendant Tenicia Smith[1] for unemployment benefits. We now reverse.

Defendant Tenicia Smith was hired by the Chicago Transit Authority (CTA) as a participant in its "summer student program" under which full-time college students are hired on a temporary basis during the summer months to perform the duties of permanent employees who are on vacation or are absent from work for other reasons. The structure of this program requires that participants be enrolled full-time in college at the time of hiring, and they must be registered or must intend to register as a full-time student for the fall term following their participation in the program. Each year, the "summer student program" terminates on September 30, and all applicants are informed of the conditions and duration of the program prior to hiring.

Smith signed an application for a temporary term of employment with the CTA on May 13, 1992, which stated that she was "eligible to return to school" and "[would] be registering for the next academic term immediately following this employment." Prior to hiring Smith, the CTA obtained a certification from Chicago State University that she was a full-time student during the term January 6, 1992, through May 15, 1992. Smith was employed as a temporary full-time bus

---

[1]Defendant Tenicia Smith has not filed a brief challenging the ruling of the circuit court and is not a party to this appeal.

operator from May 14, 1992, until September 30, 1992. Prior to her termination date, Smith decided not to return to school for the 1992 fall term, and she inquired about obtaining permanent employment with the CTA. Because she had not received a response to her request for permanent employment when her employment term under the "summer student program" expired, Smith was obligated to leave her temporary full-time position. Smith thereafter filed a claim for unemployment insurance benefits. The CTA filed an employer's protest, asserting that Smith was disqualified from receiving benefits because she voluntarily left her position. The claims adjudicator allowed Smith's application for benefits, finding that she was discharged by her employer for reasons which did not involve misconduct connected with the work.

The CTA appealed the decision of the claims adjudicator, and an administrative hearing was held before a hearing referee. The CTA's appeal asserted that Smith was not available for work because she was a student. The notice of the hearing which was sent out by the referee indicated that the issues which would be addressed at the hearing included the voluntary leaving provisions set forth in section 601(A) of the Unemployment Insurance Act (Act) and misconduct as contemplated by section 602 of the Act (820 ILCS 405/601(A), 602 (West 1994)).

Smith and an industrial relations representative for the CTA testified at the hearing. The employer's representative testified that Smith submitted a written resignation on September 30, 1992. When asked whether Smith could have continued to work for the CTA beyond September 30, 1992, the CTA representative responded, "The program ends as of September 30th."

Smith testified that during her summer employment, she decided not to return to school for the 1992 fall term. She testified further that she and the other temporary employees received notice that they could submit written applications if they wanted to be hired as permanent employees. Smith stated that she informed the CTA during her summer employment that she would not be returning to school. She also inquired as to whether any positions would be available in the fall. In addition, Smith sent a letter to the CTA headquarters and to the CTA garage where she worked, stating that she wanted to return to work after September 30, 1992, as a permanent employee. Smith testified that she received no response to her letters.

Smith stated that she resigned on September 30, 1992, only because she was told that it was necessary in order to be considered for permanent employment. Smith said that if she could have continued to work as a permanent employee she would have done so.

The decision of the referee reversed the claims adjudicator's determination that Smith was eligible for benefits. The referee found that when Smith was hired, she told her employer that she would terminate her employment when she returned to school, on or before September 30, 1992. The referee determined that section 601(A) of the Act was applicable and concluded that Smith was disqualified from receiving unemployment benefits because she voluntarily left her job without good cause attributable to her employer.

Smith appealed the referee's decision to the Board of Review. The Board determined that the case was governed by section 602(A) of the Act, which provides that claimants are disqualified from receiving benefits under the Act if they have been discharged for misconduct connected with the work. The Board reversed the referee's decision, finding that Smith was discharged for reasons other than misconduct and, therefore, was not subject to the misconduct disqualification set forth in section 602(A) of the Act.

The CTA filed a complaint seeking administrative review of the Board's decision. The circuit court reversed the decision of the Board of Review, concluding that it was against the manifest weight of the evidence and contrary to law. The court held that when Smith agreed to the terms of the summer employment program, she represented to the CTA that she did not want to work beyond September 30, 1992. The circuit court ruled that Smith was disqualified from receiving benefits under section 601(A) because she voluntarily left her job. In so ruling, the court relied primarily upon the opinion in *Calkins v. Board of Review of the Department of Employment Security* (1986), 141 Ill. App. 3d 36, 489 N.E.2d 920. The Board of Review has appealed, asserting that the circuit court erred in reversing the final administrative decision where it was neither against the manifest weight of the evidence nor contrary to law.

■ In a case involving a claim for unemployment benefits, the Board of Review is the trier of fact, and its findings of fact are considered *prima facie* true and correct. (735 ILCS 5/3—110 (West 1992); *Grant v. Board of Review of the Illinois Department of Employment Security* (1990), 200 Ill. App. 3d 732, 734, 558 N.E.2d 438.) The function of a reviewing court is to determine whether the Board's findings were against the manifest weight of the evidence. (*Jackson v. Board of Review of the Department of Labor* (1985), 105 Ill. 2d 501, 513, 475 N.E.2d 879; *Nichols v. Department of Employment Security* (1991), 218 Ill. App. 3d 803, 809, 578 N.E.2d 1121.) A reviewing court may not substitute its judgment for that of the agency unless the record lacks substantial evidence to support the agency's findings. (*Collier v. Department of Employment Security* (1987), 157 Ill. App. 3d

988, 993, 510 N.E.2d 623.) Although the right to collect unemployment insurance benefits is conditional and the burden of establishing eligibility rests with the claimant, the Act must be liberally interpreted to favor the awarding of benefits. *Adams v. Ward* (1990), 206 Ill. App. 3d 719, 723, 565 N.E.2d 53.

■ The Unemployment Insurance Act was enacted in the interest of the public welfare and is designed to provide compensation in order to alleviate the economic distress occasioned by involuntary unemployment. (820 ILCS 405/100 (West 1994); *Wadlington v. Mindes* (1970), 45 Ill. 2d 447, 452, 259 N.E.2d 257; *Miller v. Department of Employment Security* (1993), 245 Ill. App. 3d 520, 522, 615 N.E.2d 35.) The right to collect unemployment benefits under the Act is established by those claimants who have met the eligibility requirements set forth in section 500 (820 ILCS 405/500 (West 1994)) and who are not subject to any of the exemptions or disqualifications specified in the statute. Those exemptions and disqualifications include, *inter alia*, situations where the claimant is an independent contractor (820 ILCS 405/212 (West 1994)), where the claimant's principal occupation is that of a student (820 ILCS 405/500(C)(4) (West 1994)), where the claimant is unemployed due to a work stoppage which exists because of a labor dispute (820 ILCS 405/604 (West 1994)), where the claimant has refused to apply for or to accept suitable work (820 ILCS 405/603 (West 1994)), where the claimant has been discharged by the employer for misconduct connected with the work (820 ILCS 405/602 (West 1994)), or where the claimant has voluntarily left the employment without good cause attributable to the employer (820 ILCS 405/601(A) (West 1994)).

We agree with the circuit court's determination that the instant case must be analyzed under the voluntary leaving provisions contained in section 601(A) of the Act. However, we disagree with the conclusion that Smith was disqualified from receiving benefits because she voluntarily left her employment when the term of her temporary employment expired.

■ Section 601(A) of the Act provides as follows:

"An individual shall be ineligible for benefits for the week in which he has left work voluntarily without good cause attributable to the employing unit and, thereafter, until he has become reemployed and has had earnings equal to or in excess of his current weekly benefit amount ***." 820 ILCS 405/601(A) (West 1994).

Section 601(A) does not contain an express disqualification of employees hired for a specified term, nor does the Act otherwise exclude those workers who are hired for temporary positions and find

themselves unemployed upon the expiration of the employment term. The circuit court's determination that Smith was not entitled to collect benefits was predicated upon the erroneous view that the voluntary leaving provisions set forth in section 601(A) of the Act apply to those employees who are separated from the work force upon the expiration of predetermined contract terms.

■ The fact that a claimant's unemployment has resulted from the termination of temporary employment does not automatically render the separation a voluntary leaving under section 601(A) of the Act. The statute does not disqualify all workers who leave their employment voluntarily, but only those who do so without good cause attributable to the employer. This provision was intended to apply only to those situations where the decision of whether to continue working rests solely with the worker. Consequently, the statute deprives benefits to those claimants who have chosen to leave their employment of their own volition. We hold that the Act does not disqualify workers whose separation from work was compulsory under the terms of their employment contract òr as a result of a mandated policy adopted by the employer. Where the employment terms imposed by the employer allow the employee no alternative but to relinquish her position, the separation is not voluntary under section 601(A) of the Act.

In entering this judgment, we note that the courts of several other jurisdictions, interpreting similar statutory provisions, have reached the same conclusion. See *Walker Manufacturing Co. v. Pogreba* (1982), 210 Neb. 619, 316 N.W.2d 315; *Anthony Adams AIA Architect v. Department of Employment Security* (1981), 139 Vt. 413, 430 A.2d 446; *Cervantes v. Administrator, Unemployment Compensation Act* (1979), 177 Conn. 132, 411 A.2d 921; *Campbell Soup Co. v. Board of Review* (1953), 13 N.J. 431, 100 A.2d 287.

The acceptance of employment for a stipulated period does not necessarily result in a voluntary leaving at the end of the agreed time, and we are of the opinion that the remedial purposes of the Act are furthered by allowing benefits in such cases. This ruling is consistent with those cases which have held that seasonal workers are not automatically disqualified from receiving unemployment insurance benefits despite the fact that they have agreed to accept employment which is necessarily limited to a specified period of time each year. (See generally *Mohler v. Department of Labor* (1951), 409 Ill. 79, 86, 97 N.E.2d 762; *Scott v. Board of Review* (1984), 123 Ill. App. 3d 187, 191, 462 N.E.2d 801.) Accordingly, we hold that separation from work pursuant to an agreement for employment for a fixed term does not, in and of itself, operate to disqualify a claimant from receiving benefits under section 601(A).

In the case at bar, the record affirmatively established that the CTA offered Smith employment as a full-time bus driver from May 14, 1992, until September 30, 1992. The CTA set the expiration date for the contract term, and Smith did not have the option of extending that date or of continuing her employment beyond September 30, 1992. Prior to the contract termination date, Smith decided not to return to school for the fall term, and she inquired about obtaining a permanent position with the CTA. Based upon this record, the Board of Review correctly concluded that Smith did not leave her position with the CTA of her own volition. Rather, her resignation was compulsory under the terms of her employment contract, and she had no alternative but to relinquish her position. Thus, Smith's separation was not a voluntary leaving under section 601(A) of the Act.

We note that in reversing the ruling of the Board of Review, the circuit court relied principally upon the opinion in *Calkins v. Board of Review of the Department of Employment Security* (1986), 141 Ill. App. 3d 36, 489 N.E.2d 920. We find that the decision in *Calkins* is predicated upon facts which are different from those presented here.

In *Calkins*, the circuit court found that the voluntary leaving disqualification under section 601(A) of the Act precluded the collection of benefits by a legal secretary who had agreed to work for a specified number of weeks while the employer's permanent secretary took a personal leave of absence. Careful review of the opinion in *Calkins* indicates that the employer presented uncontradicted evidence establishing that the temporary employee "did not want any additional work or any employment beyond the fill in work which she agreed to do." (Emphasis omitted.) (141 Ill. App. 3d at 37.) The temporary employee did not appear at the administrative hearing and failed to present any evidence or argument that she desired further employment beyond the stipulated period. While we do not criticize the result reached in *Calkins*, we note that it was premised upon factual matters not present here. Consequently, the instant case is not governed by *Calkins*, upon which the circuit court relied.

The CTA argues that Smith was precluded from collecting unemployment benefits under section 500(C)(4) because her principal occupation was that of a student. However, the uncontradicted evidence presented at the administrative hearing established that Smith did not return to school for the 1992 fall term. Consequently, we reject the CTA's argument and hold that Smith was available for work under section 500(C)(4) in November 1992 when she applied for unemployment benefits.

Moreover, we hold that the record contains no allegations or evi-

dence that Smith had committed misconduct connected with the work. Therefore, Smith was not subject to the disqualification imposed under section 602(A) of the Act.

Accordingly, we find that the circuit court erred in reversing the decision of the Board of Review.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

McNAMARA, P.J., and RAKOWSKI, J., concur.